IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID LaPOSTA and KIMBERLY LaPOSTA,

        Plaintiffs,

v.                                 Civil Action No. 5:11CV177
                                            (STAMP)
WILLIAM M. LYLE and PARKVALE BANK,
a Pennsylvania banking corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE JURY DEMAND

### I.  Procedural History

The plaintiffs, David and Kimberly LaPosta, filed this civil action in the Circuit Court of Hancock County, West Virginia on November 12, 2010.  The original two-count complaint alleged negligence and breach of contract and arose out of the decline of a debtor/creditor relationship between the parties.  At the time that the plaintiffs filed their original complaint in state court, they instructed the Circuit Clerk of Hancock County to not serve the defendants with process.

On November 10, 2011, the plaintiffs filed a first amended complaint in the circuit court, which added a third count, a claim for malicious prosecution/abuse of process raised against defendant Parkvale Bank ("Parkvale") only.  On November 16, 2011, Parkvale was served with process.  The defendants contend that defendant William M. Lyle ("Lyle") has never been served.  The defendants

then removed this civil action to this Court based upon diversity jurisdiction under to 28 U.S.C. § 1332, on December 8, 2011.

The plaintiffs then filed a motion to remand, arguing that removal was improper because the defendants did not remove this case until more than one year after the commencement of the action, in violation of 28 U.S.C. § 1446(b).  The defendants argue that because they were not served until more than one year after the original complaint was filed, the removal is not untimely.  The defendants also filed a motion to dismiss the plaintiffs' amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as a motion to strike the plaintiffs' jury demand as waived by loan documents executed between the parties.  The plaintiffs filed responses to each of these motions, but the defendants did not reply.  All three of these pending motions have now been fully briefed and are ripe for disposition by this Court.

## II.  Facts[1]

The plaintiffs refinanced commercial loans with Advance Financial Savings Bank ("Advance") in Wintersville, Ohio in order to establish a bank floor plan for their two companies, LaPosta Automotive, Inc. and LaPosta Oldsmobile, Inc.  This bank floor plan loan was renewed in 2004.  At some point, Parkvale purchased Advance, and became the successor-in-interest of the plaintiffs'

---

[1]Unless otherwise noted, all facts are taken directly from the plaintiffs' first amended complaint.

2

loan.   The plaintiffs then allegedly engaged in a series of meetings with representatives from Parkvale, including defendant Lyle, and discussed increasing the bank floor plan credit line to $2,000,000.00, as well as obtaining an additional commercial loan.

The plaintiffs allege that defendant Lyle, as representative of Parkvale, wrongfully instructed and pressured them to enter into a new loan agreement which was detrimental to the plaintiffs' interests, and that they relied upon Mr. Lyle's advice and entered into a business loan agreement to their detriment.  This business loan agreement allegedly consolidated the plaintiffs' outstanding lines of credit to LaPosta Automotives, Inc. and Parkvale agreed to finance LaPosta Automotives, Inc.'s refinancing of new and used automobiles.  The plaintiffs also assert that Parkvale and/or Mr. Lyle induced them to execute a promissory note, for which Parkvale agreed to a $1,200,000.00 line of credit to LaPosta Automotive, Inc.

According to the plaintiffs' complaint, the defendants intended to deceive the plaintiffs into executing new loan documents which would allow Parkvale to "call the loan" and foreclose on the plaintiffs' property.  After the defendants executed multiple audits on the plaintiffs' bank floor plan, as well as a commercial property appraisal performed for Parkvale, allegedly with the intention of "calling the loan," Parkvale demanded payment in full of Promissory Note No. 296000315 in the amount of $1,055,772.68.  The plaintiffs maintain that Parkvale

subsequently filed a Notice of Order Decree of Judgment and Complaint in Confession of Judgment in Allegheny County, Pennsylvania, put a hold on the plaintiffs' bank floor plan and checking account, and also filed a civil action against them for fraud, embezzlement, larceny and willful and malicious injury. This civil action was dismissed on September 21, 2011.

## III.   Applicable Law

### A.   Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).  The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

Title 28, United States Code, Section 1446 establishes removal procedure, and mandates that any removal which violates its proscribed procedure is ineffective.  Section 1446 requires that:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise . . .

4

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more [28 USCS § 1332] more than 1 year after commencement of the action.[2]

B.    <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true.  <u>Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'"  <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir.

_____

[2]As more fully discussed below, 28 U.S.C. § 1446 has been amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which was signed into law on December 7, 2011. Pub. L. No. 112-63, 125 Stat. 758 (2011).  However, the amended language of § 1446 pursuant to this Act only applies to actions commenced after its effective date, which was nearly one month after this case was removed to this Court.  <u>Id.</u> at § 105.

1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007).

C.   <u>Motion to Strike Jury Demand</u>

Pursuant to Federal Rule of Civil Procedure 39(a)(2), a defendant may challenge the validity of a plaintiff's jury demand and seek to have the court strike the same and transfer either the entire civil action, or certain issues therein to trial before the court. In order for a party to successfully move to strike a jury demand on some or all issues of a case, the court must find that "on some or all of those issues there is no federal right to a jury trial." <u>Id.</u>

Generally, courts can find that there is no federal right to a jury trial on an issue in three situations. Jarod S. Gonzalez, <u>A Tale of Two Waivers: Waiver of the Jury Waiver Defense under the Federal Rules of Civil Procedure</u>, 87 Neb. L. Rev. 675, 688-89

(2008).  First, when there is no Seventh Amendment or statutory right to a jury trial.  <u>Id.</u>  Second, when a party has been deemed to have "forfeited the jury-trial right due to litigation conduct;" and third when "the parties have agreed to a pre-dispute contractual jury-trial waiver."  <u>Id.</u>  If a district court determines that a right to a jury trial exists on some, but not all, of the issues in the case, it is within the discretion of the district court to decline to strike the jury demand on all issues, "if this will be convenient, but this is not required and the jury trial may be limited to the issues on which there was a proper demand."  Wright & Miller, <u>Federal Practice and Procedure: Civil</u> 3d § 2332, 295.

IV.  <u>Discussion</u>

A.  <u>Motion to Remand</u>

The plaintiffs argue that this civil action was originally commenced on November 12, 2010 and was not removed to this Court until December 8, 2011.  As a result, they contend, because removal is based solely upon diversity of citizenship, 28 U.S.C. § 1446(b)'s one-year time limitation makes removal in this case untimely and necessitates remand.  The defendants argue in response that the one-year time limitation only applies in removal cases of the type described in the second paragraph of § 1446(b), those which are not originally removable, but become removable later in the litigation process.  This Court agrees with the defendants and will deny the plaintiffs' motion for remand.

7

As the defendants point out, the United States Court of Appeals for the Fourth Circuit has not directly spoken on whether the one-year time limitation of § 1446(b) applies only to the cases which are the subject of paragraph two of the section,[3] or whether it applies to all cases removed under § 1446.  However, courts of appeals that have directly addressed the issue have overwhelmingly held that the one-year limitation only applies to the cases addressed by the second paragraph, those not originally removable that only become so during the progression of the case.  See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316-17 (9th Cir. 1998); Brown v. Tokio Marine & Fire Ins. Co., 284 F.3d 871, 873 (8th Cir. 2002); Price v. Wyeth Holdings, Corp., 505 F.3d 624, 631 n.6 (7th Cir. 2007) (noting that all circuits deciding the issue have found that the one-year rule only applies to cases not initially removable); Brierly v. N.Y. Life Ins. Co. v. Deshotel, 142 F.3d 873 (5th Cir. 1998).  After analysis of the language and construction

---

[3]The plaintiffs argue that the Fourth Circuit's opinion in Lovern v. General Motors Corp., 121 F.3d 160 (4th Cir. 1997), indicates that the one-year limitation provides an absolute bar to removal of diversity cases after one year.  However, any such statement by the Fourth Circuit in Lovern is dictum.  The only question before the court in that case was whether or not a party could remove after the 30-day time limit when the parties to the action were always diverse, but the defendant was not aware of the diversity until after it engaged in discovery.  The application of the one-year rule was not at issue, nor was it analyzed by the court in its opinion.  Further, all of the United States District Court cases cited by the plaintiffs to illustrate that the Fourth Circuit considers the one-year limitation to be a complete bar are examples of cases which were not originally removable, but which became removable at some point in the litigation due to a change in parties.

of the statute, the legislative history and recent amendments, as well as the reasoning of courts outside of the Fourth Circuit, this Court concludes that no reasonable interpretation of the statute could lead to a conclusion that the one-year limitation applies to cases which were removable from the time of their filing.

Section 1446(b), as applicable to this case and cited in its entirety above, is made up of two single sentence paragraphs. The first paragraph sets forth the 30-day time limitation for removal of cases removable from the original commencement of the action. This paragraph requires that a defendant wishing to remove such a case must do so within 30 days of initially receiving a copy of the complaint and/or summons in the case.

Paragraph two provides for removal of a case that is not initially removable when the defendant is served, but which later becomes removable due to amendment by the plaintiff, order of the court, discovery of previously unknown information or another change to the case after its initial filing. This paragraph not only places a 30-day time limitation on removal after discovery that a case has become removable, but also places a total bar on removal on the basis of § 1332 diversity after a case has been pending for one year.

This Court believes that the construction of the statute, especially when coupled with Congress's stated intent behind the one-year limitation, makes clear that the limitation only applies to cases which are not initially removable but later become so due

to changes in the case as it progresses toward trial.  First, while § 1446(b) is not broken into subsections, it is clearly broken into two separate paragraphs, each containing a single sentence, and each referring to different removal situations.  While it is true that courts must strictly construe all matters of statutory construction against removal, there is "no reason to twist ordinary language usage and rules of grammar in order to preclude removal. In that regard, the most sound reading of a sentence will refer its limiting clause back to the antecedent clause to which it is attached, and not to other paragraphs or sentences in the statute." Ritchey, 139 F.3d at 1316.  The plaintiffs have presented no evidence that this reasonable construction should not be followed here, nor can this Court see any reason not to do so.

Further, the legislative history of the section clearly shows that the application of the one-year time limitation to cases such as this one, those immediately removable but not removed for over a year due to late service to the defendant, was not intended.  The one-year time limitation was added to § 1446 with the Judicial Improvements and Access to Justice Act[4] in 1988, and the history of that Act shows that the purpose of the one-year limitation was "as a means of reducing the opportunity for removal after substantial progress has been made in state court."  134 Cong. Rec. § 16308-09 (1988).  Further, Congress noted that the time limitation

---

[4]Pub. L. No. 100-702, 102 Stat. 4642 (1988).

"addresses problems that arise from a change of parties as an action progresses toward trial in state court." Id.

When an action is commenced, but sits dormant for over a year before the defendant is served, no progress whatsoever has been made in the case in state court. Thus, the purpose of avoiding the waste and inefficiency that would come from removal of an action on the eve of trial is not promoted by application to this type of case. See Deshotel, 142 F.3d at 886-87. Additionally, Congress's discussion of "problems that arise from a change of parties as an action progresses toward trial in state court" strongly suggests that Congress only intended to avoid removal when a change of parties had created diversity later in the progression of a case. Id.

This Court also believes that strong evidence of Congress's intention regarding the application of the one-year time limitation exists in the most recent amendment to § 1446, which became effective only after the filing of this case. The relevant amended version of § 1446(b) is structured as follows:

> (b)  Requirements; generally.
>
>> (1)  The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, . . .
>>
>> (3)  Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant,

> through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
>
> (c) Requirements; removal based on diversity of citizenship.
>
> > (1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 [28 USCS § 1332] more than 1 year after commencement of the action . . .

While this amendment is not controlling in this case, this Court believes that it works to clarify Congress's original intent regarding the one-year rule, as it shows that the limitation has no application to cases removed under the first paragraph of § 1446, or what is now § 1446(b)(1) under the amended version of the statute.   Accordingly, this Court finds that the one-year limitation does not apply in this case, and the plaintiffs' motion to remand is thus denied.

B.   <u>Motion to Dismiss</u>

Having determined that remand is not appropriate in this case, this Court must next address the defendants' motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   The plaintiffs' first amended complaint consists of three counts.   The defendants contend that each fails to allege sufficient facts to raise the plausibility of a right to relief "above a speculative level" as is required by <u>Twombly</u>.   This Court will address each of the defendants' contentions individually.

1.   <u>Count One: Malicious Prosecution/Abuse of Process</u>

Count One alleges malicious prosecution/abuse of process against defendant Parkvale only, and allegedly stems from a civil lawsuit filed by defendant Parkvale against the plaintiffs on or about March 2009, accusing the plaintiffs of fraud, embezzlement, larceny, and willful and malicious injury.  Defendant Parkvale contends that this claim does not sufficiently state a claim for malicious prosecution and/or abuse of process because the plaintiffs do not identify the alleged lawsuit brought against them by name, docket number, or even court.  Defendant Parkvale also claims that this count is insufficient because no facts have been pled to show why the prosecution was malicious or abusive, nor how it caused them harm.

In order to state a claim for malicious prosecution/abuse of process under West Virginia common law, a plaintiff must allege malicious intent on the part of the defendant, that the prosecution was without probable cause, and that the prosecution in question was terminated in favor of the plaintiff.  <u>Preiser v. MacQueen</u>, 177 W. Va. 273, 275, 352 S.E.2d 22, 24 (1985).  The plaintiffs state that they have sufficiently alleged a cause of action under these requirements due to the allegations raised in paragraphs 31-34 of the first amended complaint.  These paragraphs assert that (1) defendant Parkvale filed an against them on or about March 2009 and that that action accused the plaintiffs of fraud, embezzlement, larceny, and willful and malicious injury; (2) that on March 20,

2009, defendant Parkvale caused the plaintiffs to be served with process in this case; (3) that the case was dismissed in favor of the plaintiffs on September 21, 2011, and (4) that defendant Parkvale acknowledged prior to dismissal of the case that no viable claim existed against plaintiff Kimberly LaPosta, but persisted in prosecuting its claims against her.

This Court agrees with the plaintiffs that they have presented sufficient factual allegations to support their claim for malicious prosecution/abuse of process under the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). The defendants argue that the plaintiffs' failure to "give a case name, docket number or even a court" amounts to a failure to sufficiently factually allege malicious prosecution. However, these factual allegations are unnecessary. The plaintiffs allege a specific date of service, the allegations raised by the case, and the specific date of dismissal of the prosecution, which places the defendants on sufficient notice of the case which is the subject of the claim. Rule 8 does not require any specific facts to be given in order to satisfy the pleading requirements, and those given by the plaintiffs here are sufficient. Neither is the plaintiffs' failure to allege how they were harmed by this prosecution fatal to their claim at the pleading stage. The tort of malicious prosecution does not require any specific harm to be proven in order for a plaintiff to make out a prima facie case.

14

The defendants also claim that the plaintiffs have failed to factually allege all of the elements of this claim. Clearly the allegations of paragraphs 31-34 of the first amended complaint factually allege that defendant Parkvale initiated litigation against the defendants and that the litigation was dismissed in the plaintiffs' favor. These allegations further clearly allege lack of probable cause, and seemingly by inference, malicious intent on Parkvale's part with regard to Mrs. LaPosta. Whether or not the other elements described above are factually alleged, and whether malicious intent and lack of probable cause is alleged with regard to Mr. LaPosta is questionable, but such allegations are also unnecessary at the point of pleading. Even under the heightened requirements introduced in <u>Twombly</u> and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), a plaintiff is only required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 570). This does not require a plaintiff to provide factual evidence of each element of a prima facie case in order to survive a motion to dismiss. Accordingly, the defendants' motion to dismiss is denied with regard to plaintiffs' malicious prosecution claim.

2. <u>Count Two: Negligence</u>

Count Two, a claim for negligence against both defendants, alleges that the defendants "assumed the duty of providing banking/financial advice to Plaintiffs, knowing Plaintiffs would

15

rely on such advice" and that "as a result of Defendants' negligence, Plaintiffs have incurred annoyance and inconvenience, damages, attorney fees and costs." In order to sustain a negligence claim, the plaintiffs must show that "the Defendant[s] has been guilty of some act or omission in violation of a duty owed to the Plaintiff[s]." Aikens v. Debow, 208 W. Va. 486, 490 (2000). This violation of an actual duty to the plaintiffs must also be shown to have both actually and proximately caused an injury to the defendants. See Eastern Steel Constructors, Inc. v. City of Salem, 209 W. Va. 392, 396 (2001) ("in the matters of negligence, liability attaches to a wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty which results in an injury to others") (internal citations omitted). Further, in order to establish that the defendants' owed a duty to the plaintiffs in a debtor/creditor situation when the only loss alleged is purely economic in nature, the plaintiffs must establish that the relationship between the parties was such that the creditor went above and beyond the normal relationship between debtor and creditor so as to create a "special relationship." See Aikens, 208 W. Va. 486, and White v. AAMG Constr. Lending Ctr., 226 W. Va. 339, 346-47 (2010).

The defendants argue that this count should be dismissed because the plaintiffs have failed to factually allege any of the elements of a negligence claim. Initially, they maintain that no duty has been alleged because the plaintiffs simply conclusively

16

state that a duty to provide banking and financial advice was assumed by the defendants. They further argue that the plaintiffs cannot recover for pure economic loss because they have not alleged a "special relationship." However, in advancing these arguments, the defendants fail to consider the fact that the first paragraph of Count Two incorporates by reference the allegations made in the preceding 32 paragraphs of the first amended complaint.

Within those preceding paragraphs, the plaintiffs allege that they met with and discussed their loan options with defendant Lyle, who was operating as a representative of defendant Parkvale, and that defendant Lyle "acted as an advisor" and rendered advice with regard to the plaintiffs' loan options. These statements are sufficient to factually allege that the defendants created the "special relationship" necessary to establish a duty as alleged in Count Two and to allow the plaintiffs to sustain a claim for "tort-type damages" for purely economic loss. Id. at 346-47; and see Glascock v. City Nat'l Bank of West Virginia, 213 W. Va. 61, 66-67 (2002); and Aikens, 208 W. Va. at 500.

The defendants also argue that the plaintiffs have failed to allege what negligently rendered advice was given or how they were damaged by it. Again, the defendants fail to incorporate the allegations set forth in the paragraphs preceding Count Two, and incorporated by reference into the count. For example, in those paragraphs, the plaintiffs allege that defendant Lyle, acting as representative of defendant Parkvale, advised them "to execute a

new loan agreement, when in fact, the new loan agreement placed Plaintiffs in a worse position than before." The plaintiffs also allege that they relied upon this advice to their detriment, specifically, that defendant Parkvale foreclosed on their property. Both of these allegations are sufficient to satisfy the Rule 8 pleading standards for this claim. Accordingly, the defendants' motion to dismiss is also denied with regard to Count Two.

3. Count Three: Breach of Contract

The third and final count of the plaintiffs' first amended complaint alleges that a business loan agreement existed between the plaintiffs and the defendants and that the conduct of the defendants breached the implied covenant of good faith and fair dealing that was inherent in that contract.[5] Like their contentions in opposition to Count Two, the defendants argue that Count Three is devoid of any facts which would support a claim for a breach of the implied covenant of good faith and fair dealing. They maintain that the plaintiffs have not identified the contract that the defendants allegedly breached, and that they have not pled any facts regarding any alleged behavior which would show a failure to observe "reasonable commercial standards of fair dealing in the trade." LaPosta Oldsmobile, Inc. v. General Motors Corp, 426 F. Supp. 2d 346, 355 (N.D. W. Va. 2006).

---

[5]West Virginia law recognizes that "'in every contract there exists an implied covenant of good faith and fair dealing.'" Burbach Broad. Co. of DE v. Elkins Radio Corp., 278 F.3d 401, 409 (4th Cir. 2002) (quoting Harless v. First Nat'l Bank of Fairmont, 162 W. Va. 116, 121 (1978)).

18

Again, in advancing this argument, the defendants fail to consider the allegations raised in the paragraphs preceding Count Three, which are incorporated by reference.  Initially, the "operative facts" section of the first amended complaint identifies the business loan agreement between the parties in detail, including a number of terms included in the agreement, the meetings and discussions between the parties which ultimately resulted in the execution of the agreement, and the date upon which the agreement was finalized.  This section also points to multiple alleged actions which could be considered, when taken as true, to violate an implied covenant of good faith and fair dealing.  It is argued that defendant Lyle "wrongfully instructed and pressured Plaintiffs to execute a new loan agreement," and that defendant Parkvale allegedly "trick[ed] and deceive[d]" the plaintiffs into entering into a new loan agreement "to make certain that Defendants 'lined up the proper documents' so that Defendants could call the loan and foreclose on Plaintiffs' property."  The plaintiffs also allege that defendant Parkvale "caused many audits of Plaintiffs' bank floor plan," performed a commercial property appraisal, mailed the plaintiffs a letter demanding full payment and placed a hold on the plaintiffs' bank floor plan, all with the above-described nefarious purpose of setting the plaintiffs up for foreclosure. All of these allegations result in a sufficient pleading of breach of contract by way of breach of the implied duty of good faith and fair dealing.

4.   <u>Claims Against Defendant Lyle</u>

The defendants argue that the plaintiffs have failed to state any cause of action against defendant Lyle, and thus ask this Court to dismiss him from the case.   Initially, contrary to the defendants' contentions, the plaintiffs do not purport to include defendant Lyle in Count One.  This count specifically says that it is brought against defendant Parkvale only.  <u>See</u> ECF No. 2, Ex. 2 *17.  Therefore, this Court finds that defendant Lyle is not a defendant to Count One as it is framed in the first amended complaint.

As to Count Two, the defendants argue that the plaintiffs fail to state a cause of action against defendant Lyle because they simply allege that "defendants" negligently rendered advice, but do not say who gave what advice and when.  However, in the "operative facts" section of the complaint, the plaintiffs specifically allege that defendant Lyle acted as an advisor to them and that he advised them regarding their loan procurement process.

However, this Court agrees that Count Three should be dismissed against defendant Lyle because this count alleges the breach of the implied duty of good faith and fair dealing that accompanies a contract to which the plaintiffs do not allege that Mr. Lyle was a party.  In fact, they affirmatively allege that the contract was between the plaintiffs and defendant Parkvale only. West Virginia law does not recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing

20

separate and apart from a breach of contract claim.  Accordingly, because the plaintiffs have not alleged any privity of contract between themselves and defendant Lyle, he cannot be held liable for breach of an implied duty of good faith and fair dealing which would have attached to the contract.  See EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  Count Three is thus dismissed as to defendant Lyle only.

     5.   Attorney's Fees

Finally, the defendants also ask this Court to dismiss the plaintiffs' requests for attorney's fees, which are included with Counts Two and Three of the first amended complaint.  In support of this contention, they argue that there is neither a statutory nor contractual basis for a claim for attorney's fees in either of these counts.  The plaintiffs did not offer a response to this contention, and based upon the allegations in the complaint, this Court must agree with the defendants and dismiss the plaintiffs' request for attorney's fees in Counts Two and Three.  This demand is not supported by any factual allegations to support that contention the plaintiffs are entitled to such a remedy.  In order to survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must contain "more than labels and conclusions" in support of a request for relief, and accordingly, the plaintiffs' requests for attorney's fees contained in Counts Two and Three must be dismissed.  Twombly, 550 U.S. at 555 (2007)

C.   <u>Motion to Strike Jury Demand</u>

The defendants also ask this Court to strike the jury demand contained in the plaintiffs' first amended complaint because, the defendants argue, the plaintiffs waived their right to a jury trial in all of the relevant loan documents with defendant Parkvale.  In support of this contention, the defendants attach the relevant loan documents, all of which contain waiver language similar to the following:

> WAIVE JURY.  All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

Due to the fact that the right to a trial by jury is a fundamental Constitutional right, and because of a strong policy within the federal judicial system that favors jury trials, waivers of the right to a jury trial are heavily scrutinized and "courts indulge every reasonable presumption against" such waivers.  <u>Aetna Ins. Co. v. Kennedy ex rel. Bogash</u>, 301 U.S. 389, 393 (1937); and <u>see Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cnty., N.C.</u>, 149 F.3d 277, 280 (4th Cir. 1998); and <u>Mowbray v. Zumot</u>, 536 F. Supp. 2d 617, 620 (D. Md. 2008).  When jurisdiction over a case is based upon diversity, "the enforcement of a contractual jury waiver is a question of federal, not state law."  <u>Med Air Tech. Corp. v. Marwan Inv., Inc.</u>, 303 F.3d 11, 18 (1st Cir. 2002).

In determining whether to enforce a jury waiver, courts must first determine, keeping in mind the policy of strict construction against jury waivers, whether the language of the waiver

"unambiguously covers the claims asserted," Id. and see Beacon
Theatres, Inc. v. Westover, 359 U.S. 500 (1959).  Applying this
inquiry to the facts of this case and keeping in line with this
policy of strict construction, this Court cannot find that the jury
waivers contained in the relevant loan documents unambiguously
cover any of the claims asserted by the plaintiffs.

While the language of the waiver is broad, this Court finds
that the clause's reference to "any action, proceeding, or
counterclaim," is ambiguous in its scope.  Initially, the relevant
jury waiver clauses are included within each of the agreements, and
thus, must be considered as a part of the whole, "with effect being
given, if possible, to all parts of the instrument." White, 226 W.
Va. at 346 (internal citations omitted).  With this in mind, there
is no indication that any of the terms of the agreements bind the
parties in actions outside of the terms agreements themselves, and
there is no basis for this Court to conclude that the jury waiver
provision would be the only term to so bind.

Further, the clauses surrounding the jury waiver in each of
the agreements, within the "miscellaneous provisions" section of
the agreements, refer to the interpretation of the terms of the
agreements, the modification of the terms of the agreements, and
the parties' obligations and rights within the performance and
enforcement of the terms of the agreements.  Therefore, there is
also no basis to conclude that the jury waiver clause would be the
only clause within this section to reach outside of that limited

23

scope.  Accordingly, it is reasonable to conclude that "any action, proceeding, or counterclaim" refers only to those brought to enforce or challenge the terms of the agreements themselves. However, the use of the broad term "any" without further qualifying phrase which may limit the clause's applicability, could also result in a reasonable conclusion that the clause covers all actions, proceedings, or counterclaims between the parties, no matter their origin or basis.

As a result of these conflicting, yet reasonable conclusions, this Court must find that the language of the alleged waiver is ambiguous.  See Spartan Iron & Metal Corp. v. Liberty Ins. Corp., 6 F. App'x 176, 178 (4th Cir. 2001) (unpublished) ("A term is ambiguous only when it may fairly and reasonably be understood in more ways than one.").  Accordingly, pursuant to the basic contract principle that ambiguous terms must be construed against the drafter of the contract (here, defendant Parkvale), and in line with the policy of strict construction against jury waivers, this Court concludes that the waiver only applies to actions regarding the terms of the agreements of which the waivers are a part.  See Nat'l Acceptance Co. v. Myca Products, Inc., 381 F. Supp. 269, 270 (W. D. Pa. 1974).

Similar conclusions were reached by the Western District of Pennsylvania in Nat'l Acceptance Co., and by the Circuit Court of Appeals for the District of Columbia Circuit in Rodenbur v. Kaufmann, 320 F.2d 679 (1963).  In those cases, the courts were

24

interpreting language reading respectively, "Borrower and Lender hereby irrevocably waive the right to trial by jury with respect to any action in which Lender and Borrower are parties," and "It is mutually agreed by and between the landlord and Tenant that the respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other . . . and/or any claim of injury or damage." After each court determined that, applying strict construction, in relation to the surrounding terms in the contracts which only referred to the specific subject matter of the contracts, the waivers only applied to actions arising out of the terms of the agreements themselves. See id. and Nat'l Acceptance Co., 381 F. Supp. at 270.

Having thus determined the scope of the waiver, this Court finds that, based upon the pleadings, none of the three counts of the plaintiffs' first amended complaint are covered by the waiver. This conclusion is more obvious with regard to Counts One and Two, which both allege tort claims regarding acts or omissions lying entirely outside of the contractually created obligations of the parties pursuant to any of the relevant loan documents. Further, while not as readily obvious, this Court also believes that Count Three, which the plaintiffs label "Breach of Contract," is outside the scope of the jury waiver because it does not allege that the defendants breached any of the terms of the relevant contracts themselves, but rather alleges a breach of an obligation created by

25

the common law outside of the obligations of the written agreements between the parties.

While it is true, as indicated above, that claims for breach of the implied duty of good faith and fair dealing cannot be raised independently of a claim for breach of contract, it is also true that this implied duty is one created by West Virginia common law and exists wholly outside the terms of a written contract. This division between claims for breach of express contract terms and claims for breach of the implied covenant of good faith and fair dealing is evidenced by the fact that, under West Virginia law, "an implied duty of good faith cannot be used to override or modify explicit contractual terms." Riggs Nat'l Bank v. Linch, 36 F.3d 370, 373 (4th Cir. 1994).

Under this principle, claims for violations of the implied duty of good faith cannot exist regarding acts or omissions covered by the contract itself. As a result, claims for a violation of the implied duty of good faith can only allege violations of extra-contractual, common law duties not existing in the contractual agreement between the parties. While the existence of some privity of contract between parties is a necessary precursor to the existence of this common-law duty, the actual contract between parties does not create nor define the duty, so violation of the duty of good faith is not a violation of the contract itself, but rather of a duty created by the laws of West Virginia triggered by the parties' contractual relationship but existing outside of the

26

contract.  Accordingly, as pled, Count Three alleges violations of duties which exist outside of the four corners of the contracts into which the plaintiffs entered with defendant Parkvale.

This Court notes that, at this point, it appears that the plaintiffs allege general violations of the duty of good faith in the handling of the plaintiffs' loans.  Had the plaintiffs alleged that the defendants' bad faith occurred with respect to an express term of the contract, the analysis of the applicability of the jury waiver clauses may be different.  See Cumberland Typographical Union No. 244 v. Times & Alleganian Co., 943 F.2d 401, 406-07 (4th Cir. 1991) (arbitration clause covers claim for violation of implied duty of good faith with respect to a term of the collective bargaining agreement); but see also E.I. Dupont De Nemours & Co. v. Martinsville Nylon Employees Council Corp., No. 94-2222, 1996 U.S. App. LEXIS 3208, at *7-8 (4th Cir. Feb. 28, 1996) (unpublished) (holding that allegations of violations of implied duty of good faith regarding conduct of the parties in areas not covered by the collective bargaining agreement was outside the scope of arbitration clause).

However, this Court also realizes that discovery may reveal that the plaintiffs' allegations do fall within the realm of the express contract provisions.  As a result of this possibility, although this Court finds that the jury waiver does not apply to Count Three as pled, this Court denies the defendants' motion to strike the jury demand without prejudice as to this count only,

27

subject to refiling should discovery reveal that the plaintiffs' claims of bad faith fall within the terms of a relevant agreement between these parties.

## V.   Conclusion

For the reasons described above, the plaintiffs' motion to remand (ECF No. 13) is DENIED.  The defendants' motion to dismiss (ECF No. 6) is DENIED IN PART and GRANTED IN PART as framed above. Finally, the defendants' motion to strike (ECF No. 7) is DENIED WITH PREJUDICE as to Counts One and Two, and DENIED WITHOUT PREJUDICE as to Count Three, subject to refiling should discovery reveal that the plaintiffs' claims of bad faith fall within the terms of the relevant agreements between the parties.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this order to counsel of record herein.

DATED:   May 16, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE